**9**

Bonnie Baker (SBN 70572)
Bonnie Baker Law
PO Box 991471
2400 Washington Ave. Ste. 210
Redding, CA 96099-1471
(530) 241-5421
(530) 241-7138 (fax)
bonniebakerlaw@gmail.com

Stephan M. Brown (SBN 300563)
Daniel J. Griffin (SBN 311236)
The Bankruptcy Group, P.C.
3300 Douglas Blvd., Suite 100
Roseville, CA 95661
(800) 920-5351
(916) 242-8588 (fax)
daniel@thebklawoffice.com

Attorneys for Debtor
Jason Diven

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| In re:<br><br>JASON DIVEN,<br><br>    Debtor. | Case No.: 20-24311<br><br>Chapter 13<br><br>TBG-1<br><br>REPLY IN SUPPORT OF MOTION FOR DAMAGES BASED ON WILLFUL VIOLATION OF THE AUTOMATIC STAY<br><br>Date: July 1, 2021<br>Time: 10:30 a.m.<br>Courtroom: 33 |

### REPLY IN SUPPORT OF MOTION FOR DAMAGES BASED ON WILLFUL VIOLATION OF THE AUTOMATIC STAY

Debtor Jason Diven ("Debtor" or "Diven") respectfully represents as follows:

///

**ARGUMENT**

<u>The Court Does Not Need to Address the Allegations in the Opposition Through This Motion</u>

The first two pages of Creditor NUMA Corp's opposition (dkt. 111) and supporting declaration[1] focus on the merits of its underlying lawsuit, rather than the issues the Court directed the parties to brief. These portions may be ignored, as a claim objection has not been filed as of yet.

<u>Creditor, a For Profit Corporation, Failed to Present Evidence That It is Entitled to Raise Sovereign Immunity as an Affirmative Defense to Recover Funds Obtained From HUD, a United States Agency</u>

Creditor concedes that it is not an Indian Tribe, but is instead a corporation formed by a tribe. Dkt. 112, ¶ 2. A party asserting an affirmative defense has the burden of proof in presenting sufficient evidence of its standing to assert the defense. As summarized in <u>In re Whitaker</u>:

> Tribal sovereign immunity may extend to subdivisions of a tribe, including those engaged in economic activities, provided that the relationship between the tribe and the entity is sufficiently close to properly permit the entity to share in the tribe's immunity.45 As the Ninth Circuit has noted, immunity for subordinate economic entities "directly protects the sovereign Tribe's treasury, which is one of the historic purposes of sovereign immunity in general."46 While the Eighth Circuit has not established a set of factors to use in determining whether a related organization is sufficiently close to the tribe to assert its sovereign immunity,47 the most *697 commonly accepted test is the "subordinate economic entity" test, which was articulated by the Tenth Circuit Court of Appeals as relying on the following factors:
>
> 1) The method of creation of the economic entities;
> 2) Their purpose;

---

[1] The declaration submitted with the opposition is executed by Creditor's attorney. Dkt. 112. This is improper attorney testimony regarding the merits of the underlying dispute, which are contested, and should be disregarded by the Court. CAL. RULE OF PROF. COND. 3.7(a).

3) Their structure, ownership, and management, including the amount of control the tribe has over the entities;
4) The tribe's intent with respect to sharing of its sovereign immunity;
5) The financial relationship between the tribe and the entities;
6) The policies underlying tribal sovereign immunity and its connection to tribal economic development, and whether these policies are served by granting immunity to the economic entities.

In re Whitaker, 474 B.R. 687, 696–97 (B.A.P. 8th Cir. 2012).

Creditor does not explain the purpose for its formation, other than administering funds received from a non-tribal source, the U.S. Department of Housing and Urban Development. Dkt. 111, p. 3, lns. 15–18. There are a few, oblique details on Creditor's management, structure, or the Tribe's control over the entity, and no details on the financial relationship between the tribe and Creditor or how its receipt of non-tribal funds from HUD preserves its status as a purely tribal entity. Based on Creditor's failure to present sufficient evidence, its claim to the affirmative defense should be denied.

Any Claim to Sovereign Immunity Was Abrogated and Creditor Waived the Defense

Creditor is not entitled to raise sovereign immunity as an affirmative defense because Congress abrogated that right through 11 U.S.C. § 106. Further, Creditor has waived its defense by participating in the case, failing to object to the confirmed Chapter 13 plan, and failing to file an action for nondischargeability before the deadline.[2]

First, the plain language of Title 11 demonstrates Creditor cannot assert this defense. 11 U.S.C. § 106(a) states that "notwithstanding an assertion of sovereign immunity, sovereign

---

[2] While these arguments were addressed in debtor's original motion, this reply has been updated to provide additional statutory grounds and case law in support of Debtor's argument.

immiunity is abrogated as to a governmental unit to the extent set forth in [§ 362]."

"Governmental unit" is defined in § 101(27) as follows:

> The term "governmental unit" means United States; State; Commonwealth; District; Territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a State, a Commonwealth, a District, a Territory, a municipality, or a foreign state; or other foreign or domestic government.

On its face, Congress explicitly abrogated the sovereign immunity of any type of governmental body, foreign or domestic, and Creditor cannot raise this as a defense. In re Russell, 293 B.R. 34, 40 (D. Ariz. 2003) ("So the abrogation of tribal sovereign immunity by §§ 101(27) and 106(a) can be stated as a simple syllogism: Sovereign immunity is abrogated as to all domestic governments. Indian tribes are domestic governments. Hence sovereign immunity is abrogated as to Indian tribes.").[3]

This reading is further bolstered when applying the appropriate tools of statutory interpretation. The In re Greektown Holdings, LLC and In re National Cattle Congress courts concluded that the list of government types in § 101(27) means Indian governments are excluded from the "other domestic government" catch-all phrase. However, these courts have ignored the full list of other canons that weigh in favor of including Indian governments under § 101(27):

- Ejusdem generis. The general term "other [. . .] domestic government" includes all government entities similar to the enumerated governmental bodies (e.g. incorporated and unincorporated local governments), and should include Indian governmental bodies.
- Courts should not create exceptions in addition to those specified by Congress. Based on the expansive plain language in § 101(27), Indian governments should not be excepted when Congress expressed its intent to abrogate the sovereign immunity defense.

---

[3] Even accepting Creditor's argument that it is a "foreign" entity, which is contrary to the Supreme Court's extensive case law categorizing them as "domestic dependent governments," § 106 abrogates the rights of foreign governments as well.

1  
2  
3  
4  
5  
6  
7  
8  
9  

- <u>Purpose rule.</u> If there is any ambiguity, statutes should be interpreted to best carry out their statutory purposes. Here, § 101(27) should not be read to allow Indian governmental bodies to disregard the automatic stay while every other governmental body respects the authority of the bankruptcy court. This defeats the purpose of § 362, which is meant to provide relief to debtors through a stay of all proceedings absent a proper request to the bankruptcy court.
- <u>Constructions that lead to absurd or unreasonably harsh results are disfavored.</u> First, it is absurd to think that all other foreign and domestic governmental entities are subject to § 362(a) <u>except</u> for Indian governmental bodies and proceedings, relying on an unnatural reading of § 101(27). Second, it is absurd to think a governmental unit can file a proof of claim, "raid the cookie jar" of the bankruptcy estate by accepting payments under a confirmed Chapter 13 plan, then unilaterally decide to continue a lawsuit and collection activity against the debtor *while the bankruptcy case is still pending*.

10 Applying these rules of construction, Indian governmental bodies and proceedings must be

11 automatically stayed from collection activity by § 362(a).

12

13 Second, courts in the Ninth Circuit have rejected attempts by Indian tribes to assert

14 sovereign immunity in bankruptcy actions. <u>Krystal Energy Co. v. Navajo Nation</u>, 357 F.3d 1055,

15 1060–61 (9th Cir. 2004); <u>In re Brown</u>, 2006 WL 6810938 * (B.A.P. 9th Cir.); <u>Jamestown</u>

16 <u>S'Klallam Tribe v. McFarland</u>, 579 B.R. 853, 857–58 (Bankr. E.D. Cal. 2017).

17

18 Third, other courts considering tribal assertions of sovereign immunity have held the

19 sovereign immunity defense was abrogated under § 106. <u>In re Platinum Oil Properties, LLC</u>, 465

20 B.R. 621, 642–44 (D.N.M. 2011) (finding tribe could not assert sovereign immunity after

21 participating in the bankruptcy case and having its claim determined through a confirmed

22 Chapter 11 plan); <u>In re Sandmar Corp.</u>, 12 B.R. 910 (D.N.M. 1981); <u>see generally</u> <u>In re Russell</u>,

23 293 B.R. 34 (Bankr. Ariz. 2003).

24 <u>Creditor Waived Any Claim to Sovereign Immunity by Filing a Proof of Claim and Significantly</u>

25 <u>Participating in the Bankruptcy Proceedings.</u>

26

27 Courts have consistently held that filing a proof of claim constitutes waiver of sovereign

28 immunity with respect to the entity's claim. <u>In re White</u>, 139 F.3d 1268, 1271 (9th Cir. 1998)

1  (citing Gardner v. New Jersey, 329 U.S. 565 (1947); In re Death Row Records, Inc., 2012 WL

2  952292 (B.A.P. 9th Cir. 2012) (citing Gardner v. State of New Jersey, 329 U.S. at 573); In re

3
4  Barrett Refining Corp., 221 B.R. 795, 811 (Bankr. W.D. Ok. 1998) (finding waiver of sovereign

5  immunity because "[t]he filing of a proof of claim is not merely a defense, but is an affirmative

6  claim for relief" and denying request to withdraw claim to preserve sovereign immunity).

7       Creditor admits that its proof of claim does not include any language regarding sovereign

8  immunity, and does not provide an explanation for its failure to include that language. Dkt. 112,

9  ¶ 16. It then attempts to minimize its error by citing to In re National Cattle Congress, a case

10  outside the 9th Circuit. However, Creditor's opposition cherry-picks a quote to supports its

11
12  position without reviewing the reasoning in this case. In In re National Cattle Congress, when a

13  tribal creditor both filed a proof of claim and asserted sovereign immunity, the court stated as

14  follows:

15
16      The posture of this case causes a conundrum for the Court. The Tribe asserts its sovereign
        immunity as a jurisdictional bar to this Court allowing Debtor to extinguish its lien
17      through its Chapter 11 Plan. By filing the Proof of Claim, however, the Tribe appears to
        be "participating" in Debtor's reorganization. Having now acknowledged the Tribe's
18      sovereign immunity, the Court concludes that continuing to maintain a Proof of Claim in
        this case would contradict the Tribe's assertion of immunity.
19
20      The Tribe must now make an election between withdrawing its Proof of Claim or
        asserting an unqualified claim by removing the Waiver Disclaimer from the Proof of
21      Claim as filed. Under Fed.R.Bankr.P. 3006, a creditor may withdraw a proof of claim as
        a matter of right unless an objection has been filed to the claim, the creditor has accepted
22      or rejected a plan, or the creditor has otherwise significantly participated in the case.

23  In re National Cattle Congress, 247 B.R. 259, 268–69 (N.D. Iowa 2000); In re Barrett Refining

24  Corp., 221 B.R. 795, 810 (Bankr W.D. Ok. 1998).

25
26       Here, Creditor has chosen not to withdraw its claim, but instead to significantly

27  participate in the case by 1) filing a motion to dismiss the bankruptcy case, which was denied,

28  then delaying any attempt to re-file that motion or assert any other grounds to preserve its waiver

of sovereign immunity, 2) filing a proof of claim to be paid from the bankruptcy estate, and 3)

waited more than 9 months, while negotiating with Debtor's bankruptcy and tribal court counsel

regarding potential insurance proceeds to satisfy its proof of claim, failed to object to any of the

proposed Chapter 13 plans, failed to object to or appeal the court's order confirming the Chapter

13 plan, and now stands to receive payments through the confirmed Chapter 13 plan. At the end

of this process, Creditor's delay in asserting this defense should not be rewarded. Stryker

International, Inc. v. Resource Technology Corp., 2004 WL 609332 *3 (N.D. Ill.) (citing ninth

circuit authority where courts deny claims of sovereign immunity when it is invoked only after

the governmental unit learns it may receive an adverse ruling on its claim.)

       In short, the cleanest reading of §§ 101(27), 106, and 362 is to require government units

to either participate in the bankruptcy case, with all of its benefits and burdens including the

automatic stay applying to any pending litigation regarding the claim it <u>chooses</u> to file, or to

assert sovereign immunity from the beginning and to stay out of the bankruptcy proceedings

altogether.[4] Moreover, in the Ninth Circuit, the sovereign immunity defense is inapplicable

whether the creditor chooses to participate in the bankruptcy case of not. Based on the statutory

abrogation of the sovereign immunity defense, the waiver of this defense through filing Proof of

Claim 6, and Creditor's significant participation in the Chapter 13 case, and the fact that this case

was filed in the Ninth Circuit, the sovereign immunity defense cannot be raised.

<u>Mr. Duran is Separately Liable for Assisting Creditor in Committing Willful Violations of the</u>

<u>Automatic Stay</u>

---

[4] If Creditor is allowed file a claim, accept payments through the plan, then continue litigating
the same causes of action in a separate forum, Creditor will get two bites at the apple while
depriving Debtor of the protections under the bankruptcy code.

First, attorneys can be jointly liable when they are responsible for their client's willful

violations of the automatic stay. See In re LeGrand, 612 B.R. 604, 612 (Bankr. E.D. Cal. 2020)

(citing Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship, 507 U.S. 380, 396–97 (1993);

Link v. Wabash R. Co., 370 U.S. 626, 633–34 (1962); Smith v. Ayer, 101 U.S. 320, 325–26

(1879)).

Second, bankruptcy courts have the power to enforce the automatic stay and discharge

order through contempt sanctions against the individual actors violating the stay to the same

extent as any other creditor who has violated a court order. Goldberg v. Ellett, 254 F.3d 1135,

1146–47 (9th Cir. 2001) (discharge order bound state government despite assertion of sovereign

immunity, and state official that authorized violation of the discharge order could be liable for

contempt sanctions). Debtor would need to conduct limited discovery regarding the identity of

the individual(s) responsible for Creditor continuing litigation despite actual knowledge of the

automatic stay and the Court's order confirming the Chapter 13 plan.

Third, unlike his client, Mr. Duran cannot raise sovereign immunity as an affirmative

defense, and has a separate, affirmative duty to not violate the automatic stay. Mr. Duran, as a

natural person, is an "entity" under 11 U.S.C §§ 101(15) and 362(a), and he cannot continue an

action or proceeding against Debtor without obtaining an order granting relief from the

automatic stay from the bankruptcy court.

On these grounds, Debtor is entitled to an award of all damages asserted for the willful

violations of the automatic stay and plan confirmation order.

## CONCLUSION

On the grounds presented, Debtor is entitled to recover all attorney's fees and costs

incurred in prosecuting this motion. Debtor should also be compensated for the emotional

8
REPLY

distress and expenses incurred as a result of Creditor's reckless disregard of this Court's orders.

Creditor and Mr. Duran should be punished for their willful acts and attempting to obtain a void,

unenforceable order in the tribal court and their flagrant disregard for this bankruptcy court's

exclusive jurisdiction.

## **CONCLUSION**

For the reasons stated above, Debtor requests the following relief:

1. The Court award actual damages of attorney's fees incurred;

2. The Court award emotional distress damages;

3. The Court award punitive damages in an amount necessary to punish the willful

acts of Creditor and its counsel, and to deter any further attempts to continue the tribal

court case without further order from the bankruptcy court; and

4. Any other and further relief the Court deems necessary or proper.

Dated: June 18, 2021

/s/ Daniel Griffin
Daniel Griffin
Attorney for Debtor